UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Shawn W. Byrne,                          :
       Plaintiff,                     :
                             :
       v.                             :   File No. 2:05-cv-15
                             :
Dawn Terrill, in her official            :
capacity as Vermont Secretary            :
of Transportation; and                   :
Bonnie L. Rutledge,                       :
individually and in her                  :
official capacity as Vermont             :
Commissioner of Motor Vehicles,          :
       Defendants.                    :

## MAGISTRATE JUDGE'S REPORT & RECOMMENDATION
(Papers 15 & 19)

Plaintiff Shawn W. Byrne brought this action against

Defendants Dawn Terrill, Vermont Secretary of

Transportation, and Bonnie Rutledge, Vermont Commissioner of

Motor Vehicles (collectively "the DMV").  Byrne alleges

various First and Fourteenth Amendment claims arising from

the DMV's rejection of Byrne's application for a vanity

license plate.  The case is currently before the Court on

Byrne's motion for a preliminary injunction and the DMV's

motion to dismiss.

For the following reasons, I recommend that Byrne's

motion for preliminary injunction be DENIED, and the DMV's

motion to dismiss be DENIED.

Factual Background

For the purposes of this motion, the following facts are taken as true.[1]  The Commissioner of the DMV is authorized by statute to issue license plates to individuals who register their cars in Vermont.  23 V.S.A. § 304.  For an additional fee of $30.00, individuals may request a vanity plate.  Id. at § 304(b)(1).  The individual requesting a vanity plate may choose his own plate number, with several specified restrictions, including combination of letters and numbers and subject matter.[2]  Id. at § 304(d).

Byrne applied for a vanity plate on April 20, 2004. (Paper 8, ¶ 15).  On his application, Byrne indicated

---

[1] On a motion to dismiss, the Court must accept the allegations of the complaint as fact, and draw all reasonable inferences in favor of the plaintiff.  Walker v. New York, 974 F.2d 293, 298 (2d Cir. 1992).  These facts, therefore, are taken from the complaint and the documents attached and incorporated into the complaint.  To the extent additional facts need to be considered in order to decide Byrne's motion for preliminary injunction, they will be noted in the discussion on that motion, and will not be considered when discussing the motion to dismiss.

[2] There may be no more than seven total characters on a vanity plate.  23 V.S.A. § 304(d).  No more than two numbers are permitted in combination with letters.  Vt. Code R. 14-050-025(b)(1).

"JOHN316," "JN316," and JN36TN" as his first, second, and
third choices for his vanity plate.  (<u>Id.</u> at ¶ 18).  Byrne
indicated that all three choices represented a "Bible
passage."  (<u>Id.</u> at ¶ 19).  The DMV rejected Byrne's
application, indicating that the choices were rejected
because they referred to a deity.[3]  (<u>Id.</u> at ¶ 21).

The letter rejecting Byrne's application also informed
him of his right to have a hearing.  (<u>Id.</u> at ¶ 23).  Byrne
requested and received an administrative hearing before the
Vermont Agency of Transportation.  (<u>Id.</u> at ¶¶ 23-27).  On
August 30, 2004, the DMV's decision to reject Byrne's
choices was affirmed.  (<u>Id.</u> at ¶ 28).

<u>Discussion</u>

1.  <u>Preliminary Injunction</u>

Byrne is seeking a preliminary injunction preventing
the DMV from enforcing the provisions in the vanity license
statute and regulations which exclude "[c]ombinations of
letters, or numbers that refer, in any language, to a . . .
religion . . . [or] deity."  <u>See</u> 23 V.S.A. § 304(d)(4); Vt.

_____

[3] As Byrne concedes, two of the choices also violated
the number limitation.  That was not the basis for the DMV's
rejection of the plates, however.

3

Code R. 14-050-025.[4]

A. <u>Standard</u>

A party seeking a preliminary injunction "must establish that it will suffer irreparable harm in the absence of an injunction and demonstrate either (1) 'a likelihood of success on the merits' or (2) 'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly' in the movant's favor." <u>Jolly v. Coughlin</u>, 76 F.3d 468, 473 (2d Cir. 1996) ((citing <u>Waldman Publishing Corp. v. Landoll, Inc.</u>, 43 F.3d 775, 779-80 (2d Cir. 1994); <u>Coca-Cola Co. v. Tropicana Prods., Inc.</u>, 690 F.2d 312, 314-15 (2d Cir. 1982)).  In addition, "[t]he moving party must make a 'clear' or 'substantial' showing of likelihood

---

[4] When Byrne initially applied for a vanity plate, this phrase appeared only in the Vermont Code of Regulations. After Byrne applied for the plate but before the DMV rejected his application, the statute was amended to include this language.  Prior to that amendment, the statute simply stated that "[t]he commissioner may refuse to honor any request that might be offensive or confusing to the general public." <u>See</u> <u>Martin v. Vermont</u> 175 Vt. 85, 88 (2003).  The regulations then permitted the commissioner to reject combinations of letters and numbers that belonged to one of seven categories, regardless of whether they were offensive. <u>Id.</u> at 82.  In <u>Martin</u>, the Vermont Supreme Court held that the regulation exceeded the scope of the DMV's statutory authority.  <u>Id.</u> at 92.

of success [on the merits] where the injunction sought 'will alter, rather than maintain the status quo." Id. at 473 (citing Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc., 60 F.3d 27, 33-34 (2d Cir. 1996)).

    B.  Irreparable Harm

Byrne alleges that the DMV's statute and regulations regarding vanity plates violate his First Amendment right to express his religious views on his license plate. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 327, 373 (1976). The Second Circuit recently examined its own jurisprudence regarding irreparable injury in First Amendment cases, and found that "[w]here a plaintiff alleges injury from a rule or regulation that directly limits speech, the irreparable nature of the harm may be presumed." Bronx Household of Faith v. Bd. of Educ., 331 F.3d 342, 349 (2d Cir. 2003). In contrast, when the rule or regulation only has the potential to affect speech, the plaintiff must make a showing of irreparable harm. Id. at 350.

In this case, the statute and regulations in question directly affect speech. As such, irreparable harm may be

presumed.  In considering Byrne's motion for preliminary injunction, then, the main issue is the likelihood of success on the merits.

    C.  Likelihood of Success

        1.  Type of Forum

Under Vermont law, all license plates, including vanity license plates, are the property of the state.  23 V.S.A. § 306.  "[T]he government need not permit all forms of speech on property that it owns and controls."  Int'l Soc'y for Krishna Consciousness, Inc., v. Lee, 505 U.S. 672, 678 (1992).  The Supreme Court has identified three categories of government property for the purpose of evaluating the effect of regulations on private speech on government-owned property.  Perry v. McDonald, 280 F.3d 159, 166 (2d Cir. 2001).  The Second Circuit has determined that Vermont's vanity license plates are a nonpublic forum.  Id. at 169.

Byrne argues in passing that Perry was incorrect in its holding that the Vermont vanity plate is a nonpublic forum, arguing that the Second Circuit based its reasoning on the extensive regulation of the plates.[5]  (Paper 15 at 8-9, n.

---

     [5] At oral argument, Byrne conceded that the vanity license plate is a nonpublic forum under Second Circuit law, but again expressed disagreement with the holding in Perry.

3).  Byrne further argues that the primary purpose of the
Vermont vanity plate is to permit "virtually any Vermont car
owner to display a personal message on his or her license
plate," and thus the Vermont vanity plate is "the
quintessential designated public forum."  (Id.).  Although
Byrne may disagree with the holding in Perry, the Second
Circuit has not revisted the issue, and this Court is
therefore bound by Perry's holding.

Even if this Court were not bound by the Second
Circuit's determination, however, its reasoning is
persuasive.  In determining whether the a particular forum
is a designated public forum or a non-public forum, courts
look to factors such as "the policy and practice of the
government" and the nature of the property and its
compatibility with expressive behavior.  Perry, 280 F.3d at
167.  "The government does not create a public forum by
inaction or by permitting limited discourse, but only by
intentionally opening a nontraditional forum for public
discourse."  Cornelius v. NAACP Legal Defense and Educ.
Fund, 473 U.S. 788, 802 (1985).

In Perry, the Second Circuit analyzed the purpose of
the vanity license plate and found that Vermont did not

intend to create a public forum through its vanity license program.  Perry, 280 F.3d at 167.  The stated statutory purpose of the vanity plate, as with any license plate, is vehicle identification.  23 V.S.A. § 304(b)(2)(C).  The Second Circuit further found that a secondary purpose of the program was to raise revenue, that the expression allowed was highly regulated, and that the general public did not have unimpeded access to the forum; only Vermont vehicle owners who have applied for and obtained permission may display a vanity plate.  Perry, 280 F.3d at 167-68.  Finally, the Second Circuit determined that the vanity plates "are an unlikely means by which to engage in meaningful 'assembly and debate'" because of both the physical limitations of the space and the government's interests.  Id. at 168.  As such, the Vermont vanity plate is a nonpublic forum.

"Control over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions are reasonable in light of the purpose served by the forum and are viewpoint neutral."  Cornelius, 473 U.S. at 806.  In order to determine Byrne's likelihood of success on the merits, then, this Court must determine

whether the restrictions on vanity license plates are reasonable and viewpoint neutral.

2. <u>Reasonableness</u>

The statute governing vanity license plates provides:

> The commissioner may adopt rules for the issuance of special number plates to ensure that all plates serve the primary purpose of vehicle identification. The commissioner may revoke any plate described in subdivisions (1) through (7) of this subsection and shall not issue special number plates with the following combination of letters or numbers:
>
> . . .
>
> (4) Combinations of letters or numbers that refer, in any language, to a . . . religion, . . . [or] deity . . . .
>
> . . .
>
> (7) Combinations of letters or numbers that form, in any language, a slang term, abbreviation, phonetic spelling or mirror image of a word described in subdivisions (1) through (6) of this subsection.

23 V.S.A. § 304(d).

"A governmental restriction on speech in a nonpublic forum 'need only be reasonable in light of the purpose of the forum . . . and reflect a legitimate government concern.'" <u>Perry</u>, 280 F.3d at 169 (quoting <u>General Media Communications, Inc. v. Cohen</u>, 131 F.3d 273, 282 (2d Cir. 2001). The restriction does not need to be most reasonable

or only reasonable limitation; it need only be reasonable.
Cornelius, 473 U.S. at 808.

     The DMV argues that the regulation is reasonable,
because the state is associated with the license plate and
does not want to be seen as endorsing or approving of a
particular religious message.  Byrne argues that it is not
reasonable for the state to fear being viewed as endorsing
religion.  He argues that his wife has seen three other
license plates with religious messages, and that the DMV has
therefore selectively enforced the statute and should not be
allowed to refuse his application.  He argues that, despite
the fact that the state retains ownership of the license
plates, the message of the plate is clearly private, and
would not be associated with the state.

     As the Second Circuit noted in Perry, "[a]utomobile
license plates are governmental property intended primarily
to serve a government purpose, and inevitably they will be
associated with the state that issues them."  Perry, 280
F.3d at 169.  Byrne asserts that "[t]he only possible
government interest Vermont can assert for restricting
religious messages on vanity plates is . . . 'protecting the
public, especially children, from offensive and indecent

speech,'" and argues that the regulation is "a classic example of an unconstitutional 'heckler's veto.'" (Paper 15 at 15).  As the DMV argues, however, the state has an interest in disassociating itself from religion, in order to avoid being seen as endorsing religion.  See Cornelius, 473 U.S. at 809 ("avoiding the appearance of political favoritism is a valid justification for limiting speech in a non-public forum"); Make the Road by Walking v. Turner, 378 F.3d 133, 148 (2d Cir. 2004) ("where allowing private expression in a nonpublic forum may imply government endorsement of the expression, limiting or excluding speakers may be reasonable.").  The statutory exclusion of all references to religion and deities is a reasonable measure to meet this stated goal.

Byrne argues that permitting individuals to display religious messages on vanity license plates will not interfere with the purposes of the license plate.  He argues that the primary purpose of the vanity plates is personal expression, with vehicle identification and revenue raising as secondary purposes.  Although the vanity plate does permit some self-expression, the primary purpose of all license plates, including vanity license plates, is vehicle

identification.  See Perry, 280 F.3d at 167; 23 V.S.A. §

304(b)(2)(C).  In addition, any self-expression is limited

by the size of the plate, the number of characters

permitted, and the number of letters and numbers that may be

used in combination.  See Vt. Code R. 14-050-025.  While it

may be true that Byrne's choice of license plate does not

interfere with the purpose of the forum, "the fact that the

prohibited expression does not 'interfere' with a *principal*

purpose of the forum does not render the prohibition

unconstitutional."  Perry, 280 F.3d at 169.  In addition, as

in Perry, the statute does not prohibit Byrne from

expressing his religious views on his car through a bumper

sticker.  As such, the statute is reasonable.

Byrne also argues that fear of endorsement is not a

legitimate state interest, and "is patently unreasonable

under the Supreme Court's endorsement test." (Paper 25 at

10).  He further argues that "the Establishment Clause

imposes a positive duty of neutrality toward religious

speech," and therefore Vermont must provide equal access to

all religious speakers, and may not exclude them.  (Id.).

The Supreme Court has said that "a state interest in

avoiding an Establishment Clause violation 'may be

12

characterized as compelling,' and therefore may justify
content-based discrimination." <u>Good News Club v. Milford
Central School</u>, 533 U.S. 98, 112 (2001) (quoting <u>Widmar v.
Vincent</u>, 454 U.S. 263, 271 (1981)).  As already noted, the
state may exclude subjects or speakers from a non-public
forum, so long as the reason behind the exclusion is
content-based, not viewpoint based.

Byrne in correct that the government's neutrality
toward religion is a significant factor in determining
whether a particular aid program can withstand an
Establishment Clause challenge.  <u>Rosenberger v. Rector and
Visitors of the Univ. of Va.</u>, 515 U.S. 819, 839 (1995).  In
that case, a public university refused to provide a
religious student organization with funding to publish a
Christian student newspaper.  <u>Id.</u> at 824-27.  The Supreme
Court found that the Establishment Clause did not require
this exclusion, noting that there is a difference between
"government speech endorsing religion, which the
Constitution forbids, and private speech endorsing religion,
which the Free Speech and Free Exercise Clauses protect."
<u>Id.</u> at 841.  In particular, the Court noted that the
university took pains to disassociate itself from the speech

13

at issue, and there was no real likelihood that anyone would mistake the group's message for the university's.  Id.

In Rosenberger, all groups receiving funds were required to include a disclaimer in all dealings with third parties and all written materials, stating that the group was independent of the university, and that the university was not responsible for the group.  Id. at 824.  In this case, there is no disclaimer on the license plate; instead, each license plate is imprinted with the word "Vermont." The plates remain property of the state.  The plates may only be obtained by applying to the state and having that application approved.  So long as Vermont's exclusion of religious references is viewpoint neutral, its stated interest in not appearing to endorse religion is compelling.

## 2.  Viewpoint Neutrality

"Implicit in the concept of a nonpublic forum is the right to make distinctions in access on the basis of subject matter and speaker identity." Perry Educ. Assoc. v. Perry Local Educ. Assoc., 460 U.S. 37, 49 (1983).  Any distinction may be content based, but must be viewpoint neutral.  Byrne cites several Supreme Court cases to argue that any exclusion based on religion is viewpoint discrimination, and

14

therefore impermissible.  He argues that people wishing to place religious references on their license plates are speaking from a religious viewpoint, and must be permitted. The cases he cites, however, are distinguishable from the instant case.

In Lamb's Chapel v. Central Moriches Union Free School District, a New York law permitted the use of public school property for several enumerated purposes, not including religious purposes.  508 U.S. 384, 386-87 (1993).  A church group applied to use a school building to show six films about family issues and child rearing, with a Christian perspective.  Id. at 388-89.  The school district rejected the group's application, explaining that it was not allowed to permit religious groups to use the building.  The Supreme Court held that this constituted impermissible viewpoint discrimination, because non-secular films about family issues and child rearing would be permitted.  Id. at 362-63.

In Good News Club, the Supreme Court held that a public school had violated a religious group's free speech rights by not permitting them to hold Club activities on school grounds during non-school hours.  Good News Club, 533 U.S. at 111-12.  In reaching that decision, the Court noted that

15

other groups, whose purpose was to promote the moral and character development of children, were permitted to hold activities on school grounds when school was not in session. Id. at 108.  The Court then found that the purpose of the religious club was also to promote the moral and character development of children, but from a Christian perspective. Id.  As such, the group was excluded solely on the basis of its viewpoint, and the exclusion was impermissible viewpoint discrimination.  Id.

The cases just discussed do not stand for the proposition that religion as a subject matter may not be limited; they merely state that groups may not be excluded merely because they have a religious viewpoint, if the subject matter they wish to discuss or present would be permitted absent the religious viewpoint.  As the Supreme Court has noted, the distinction between content and viewpoint discrimination is not always clear.  Rosenberger, 515 U.S. at 831.  Viewpoint discrimination is, essentially, a more extreme form of content discrimination.  Id. at 829. Viewpoint discrimination occurs when "the government targets not the subject matter, but particular views taken by speakers on a subject."  Id.

16

The forum at issue in this case is a license plate.
The size and character limitations permit only a word or
brief phrase to be displayed.  No issues or subjects can be
discussed on a license plate.  Byrne's plates were not
rejected because of his religious viewpoint; they were
rejected because they referenced subject matter that the
state has chosen to exclude from the vanity license plate, a
non-public forum.[6]  The religious exclusion in the statute

_____

[6] Byrne emphasizes the fact that the DMV only
recognized his plate as referring to a religion or to a
deity because he told them it did.  He argues that he would
have been permitted to have JN36TN on his plate if he had
said it referred to, for example, "John, 36 years old, from
Tennessee." (Paper 15, p. 11).  He argues that this is
proof that the DMV is exercising impermissible
discrimination based on his religious viewpoint.  This is
not the case.
     As already noted, the Supreme Court has held that
viewpoint discrimination is sometimes based on a religious
viewpoint.  See, e.g., Good News Club, 533 U.S. at 111-12;
Rosenberger, 515 U.S. at 824; Lamb's Chapel, 508 U.S. at
362-63.  All of those cases involved fora in which
discussions about general topics, such as child rearing,
morality, or family values were permitted, but only as long
as they were discussed from a secular viewpoint.  In this
case, there is no discussion, merely a word or phrase.
Words or phrases that refer to a particular subject,
including religion or a deity, can be excluded.  Vermont has
chosen to exclude the subjects of religion and deities,
among others.  If a religious reference was sufficiently
obscure and the applicant indicated a non-religious meaning,
a vanity plate might be issued with a religious reference on
it.  If someone called to complain about the plate, however,
and a religious reference was discovered, the DMV would have
to recall the plate in order to avoid viewpoint

excludes all references to a deity or religion in any
language, regardless of the viewpoint of the speaker.  This
is a permissible content-based exclusion, and does not
constitute viewpoint discrimination.

The Supreme Court has not addressed vanity license
plates in this context.  Neither have many other courts.
Cases dealing with license plates from other courts are not
particularly useful here.  For example, the Eastern District
of Virginia struck down a vanity license plate statute that
permitted religious references, but prohibited references to
a deity.  Pruitt v. Wilder, 840 F. Supp. 414 (E.D. Va.
1994).  The court reasoned that the regulation constituted
viewpoint discrimination, because the statute permitted most
religious speech but prohibited one subset of religious
speech.  Id. at 418.  In this case, however, Vermont
prohibits all religious references.  Likewise, the Fourth
Circuit has struck down a statute prohibiting the use of a

---

discrimination.  In the converse situation, an application
for "God" or "Buddha" or "Jesus" would have to be rejected,
no matter what reason the applicant put down.  The fact that
a religious reference is obscure enough to not be
immediately recognized as such by the DMV does not make it a
permissible subject matter for the nonpublic forum, and does
not mean that the DMV or the state is practicing viewpoint
discrimination.

confederate flag symbol on a group license plate, when no other group's choice of symbol had ever been regulated by the legislature.  Sons of Confederate Veterans Inc. v. Commissioner of the Virginia Dep't of Motor Vehicles, 288 F.3d 610 (4th Cir. 2002).  Again, Vermont prohibits all religious references, as well as a variety of other, non-religious references.[7]

Byrne also argues that the DMV is selectively enforcing the statute, because his wife has seen three license plates with religious references.[8]  Assuming that these plates do

_____

[7] Byrne also argues that, by including religious references in the list of prohibited subjects, the DMV is equating religion with obscenity.  This is simply not the case.  The statute excludes other subject matters in addition to obscenity and religion.  This case is distinguishable from the Seventh Circuit case cited by Byrne.  In Hedges v. Wauconodo Cmty. Unit Sch. Dist. No. 118, a school regulation prohibited students from distributing any written material that was obscene, indecent, libelous, or religious.  9 F.3d 1295 (7th Cir. 1993).  Distribution of other written material on all subjects was permitted.  This policy was held unconstitutional because it was a flat ban on all religious speech in a public school setting.  Again, the forum at issue in this case is restricted in size and number of characters-no discussion of issues is taking place.  In addition, the state does not ban religious messages on automobiles, as bumper stickers are permitted.  It has simply decided to prohibit certain subjects in the non-public forum of the license plate, including religion.

[8] The plates in question are "RI-CHUS," "HIREPWR," and "PSALM."

contain religious references, their existence is not
necessarily evidence of selective enforcement.  As the DMV
pointed out at oral argument, the statute and regulation
governing vanity license plates were recently revised.
Previously, the statute stated that the DMV could refuse to
issue plates "that might be offensive or confusing to the
general public."  See Martin v. Vermont Agency of Transp.
Dep't of Motor Vehicles, 175 Vt. 80, 88 (2003).  The statute
did not prohibit any categories of speech, instead leaving
it to the Commissioner's discretion to prohibit any
offensive or confusing speech.  Id. at 89.  The DMV then
promulgated regulations that prohibited certain categories
of speech; these regulations were struck down by the Vermont
Supreme Court in 2003, as being beyond the scope of the
statutory authorization of the DMV.  Id. at 91-92.  The
plates seen by Byrne may have been issued during the time
after the regulation had been struck down but before the
enactment of the new statute.  Additionally, the Second
Circuit held in Perry that errors in enforcement do not
constitute viewpoint discrimination.  Perry, 280 F.3d at
171.  These assertions are simply not enough to show a clear
likelihood of success on the merits.

### 3.  Other Arguments

Byrne also argues that the statute is an impermissible prior restraint, is overly broad, is impermissibly vague, and violates equal protection.  Assuming *arguendo* that the statute does constitute a prior restraint, Byrne cannot show a clear likelihood of success.  Although a prior restraint in a public forum is subject to strict scrutiny, a prior restraint in a nonpublic forum need only be reasonable and viewpoint neutral.  Perry, 280 F.3d at 171.  As already discussed, the statute at issue here is reasonable and viewpoint neutral, and as such is permissible as a prior restraint.  Byrne's overbreadth argument fails for the same reason.  See Make the Road by Walking, 378 F.3d at 150. Finally, as the DMV notes, the statute specifically prohibits references to religion and deities, and thus specifically covers Byrne's application.  "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."  Village of Hoffman Estates v. Flipside, Hoffman Estates Inc., 455 U.S. 489, 495 n.7 (1982) (quoting United States v. National Dairy Products Corp., 372 U.S. 29 (1963)).

Finally, Byrne brings an equal protection challenge to

the statute, arguing that the DMV has permitted other, similarly situated people to express themselves on the license plates while denying his application.  "When speakers and subjects are similarly situated, the State may not pick and choose.  Conversely on government property that has not been made a public forum, not all speech is equally situated, and the State may draw distinctions which relate to the special purpose for which the property is used." Perry Educ. Assoc., 460 U.S. at 55 (1983).

The purpose of the vanity license plate is primarily vehicle identification and revenue raising.  Vermont asserts that it has an interest in not appearing to endorse religion, because the plates are state property, are marked with the word "Vermont," can only be obtained by applying to the state, and each application must be approved by the state.  As already discussed, this is a proper state interest.  As such, people who applied for vanity plates with a message that did not refer to a deity or religion were not similarly situated, and Byrne's equal protection challenge must fail.

Motion to Dismiss

On a motion to dismiss pursuant to Rule 12(b)(6) of the

22

Federal Rules of Civil Procedure, the court must read the complaint with generosity. <u>Walker v. New York</u>, 974 F.2d 293, 298 (2d Cir. 1992).  Taking the plaintiff's allegations as true, the court must construe the complaint in the light most favorable to the plaintiff, and must draw all inferences in plaintiff's favor. <u>Cosmas v. Hassett</u>, 886 F.2d 8, 11 (2d Cir. 1989).  The complaint must not be dismissed unless "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" <u>Equal Employment Opportunity Comm'n v. Staten Island Savings Bank</u>, 207 F.3d 144, 148 (2d Cir. 2000) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).  Indeed, there is an important difference between disposing of a case on a 12(b)(6) motion and resolving the case later in the proceedings, for example by summary judgment. <u>See Chance v. Armstrong</u>, 143 F.3d 698, 701 (2d Cir. 1998).  In a 12(b)(6) motion, "the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." <u>Id.</u> (citations and internal quotation marks omitted).

Although Byrne has not met the higher standard

required for a mandatory injunction, it would be premature to dismiss his complaint at this stage.  Although the statute appears to be viewpoint neutral on its face, Byrne asserts that some religious references have been permitted by the DMV.  If that is the case, Byrne may have a viable equal protection claim, as distinctions between religious speech would not be reasonable.  In addition, if the DMV is permitting some religious references on vanity license plates but prohibiting others, the DMV could be discriminating on the basis of viewpoint, not subject matter.  Although the DMV asserts that these plates could have been issued accidentally or before the new statute was implemented, that is a question that cannot be determined solely on the basis of the complaint and the statute.  As such, it is more appropriate for resolution at the summary judgment or trial stage.

CONCLUSION

For the foregoing reasons, I recommend that this Court DENY Byrne's motion for preliminary injunction (Paper 15) and DENY the DMV's motion to dismiss.  (Paper 19).

Dated at Burlington, in the District of Vermont, this 1st day of August, 2005.

24

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge


Any party may object to this Report and Recommendation
within 10 days after service by filing with the clerk of the
court and serving on the magistrate judge and all parties,
written objections which shall specifically identify the
portions of the proposed findings, recommendations or report
to which objection is made and the basis for such
objections.  Failure to file objections within the specified
time waives the right to appeal the District Court's order.
See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1);
Fed. R. Civ. P. 72(b), 6(a) and 6(e).