UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Shawn W. Byrne,                    :
          Plaintiff,               :
                                   :
          v.                       :  Civil No. 2:05-CV-15
                                   :
Neal Lunderville, in his           :
official capacity as Vermont       :
Secretary of Transportation;       :
and Bonnie L. Rutledge,            :
in her official capacity as        :
Vermont Commissioner of            :
Motor Vehicles,                    :
          Defendants.              :


## MAGISTRATE JUDGE'S REPORT & RECOMMENDATION
(Papers 63, 71, 77-1)

Plaintiff Shawn W. Bryne brings this action against Defendants Dawn Terrill,[1] former Vermont Secretary of Transportation, and Bonnie Rutledge, Vermont Commissioner of Motor Vehicles (collectively "the DMV").  Bryne alleges his rights under the First and Fourteenth Amendments were violated when the DMV rejected his application for vanity plate "JN36TN."  The case is currently before the Court on the parties' cross-motions for summary judgment and Bryne's motion to strike certain summary judgment evidence.

---

[1] Neal Lunderville succeeded Terrill as Vermont Secretary of Transportation and he was substituted as a party pursuant to Fed. R. Civ. P. 25(d)(1).

For the following reasons, I recommend that Bryne's motions for summary judgment and to strike be **DENIED**, and that the DMV's motion for summary judgment be **GRANTED**.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This Court issued a Report and Recommendation[2] on August 1, 2005, denying Bryne's motion for preliminary injunction and the DMV's motion to dismiss, familiarity with which is presumed.  The following additional facts are undisputed unless otherwise noted.

The Commissioner of the DMV is authorized by statute to issue license plates to individuals who register their cars in Vermont ("registrants").  23 V.S.A. § 304 (Supp. 2006).  For an additional fee of $35.00, registrants may request a special plate, known colloquially as a "vanity plate."  Id. at § 304(b)(1).  The registrant may choose, in order of preference, up to three letter or number combinations for his vanity plate.

Bryne applied for a vanity plate on April 20, 2004.  His first, second, and third choices for a vanity plate were "John316," "JN316," and "JN36TN" respectively.  He stated on his application that all three represented a Bible passage.

---

[2] On August 23, 2006, Judge Murtha adopted the Report and Recommendation. (Paper 38).

2

The DMV rejected Bryne's application on May 14, 2004 because it referred to a deity in violation of Title 23, Section 304(d)(4) of the Vermont statutes annotated.[3]  Bryne's rejection letter informed him of his right to a hearing before the Vermont Agency of Transportation.  Bryne requested a hearing which was held on July 1, 2004.  Bryne and his attorney were present at the hearing and Bryne testified.  On August 30, 2004, the hearing officer affirmed the DMV's rejection of Bryne's application.  The hearing officer found that all three of Bryne's proposed choices referred to the Gospel of John, chapter 3, verse 6, from the New Testament of the Bible, which reads:  "For God so loved the world that he gave his one and only Son, that whoever believed in him shall not perish but have eternal life." (Paper 74-9).  The hearing officer found that the application was properly denied because it referred to a religion.

Proposed vanity plate selections are subject to several restrictions, including combination of letters and numbers, and subject matter.  There may be no more than

---

[3] Bryne concedes that his first two choices also violated the number/letter limitation.  However, that was not the stated basis for the DMV's rejection of the application.

seven total characters on a vanity plate and the requested combination of letters and numerals must not duplicate or resemble a regular issue registration plate.  23 V.S.A. § 304(d).  In addition, no more than two numbers are permitted in combination with letters.  Vt. Code R. 14 050 025(b)(1) (2007).  The current Vermont statute and Vermont Code of Regulations explicitly prohibit seven categories of letter-number combinations.  23 V.S.A. § 304(d)(1)-(7); Vt. Code R. 14 050, § 025(f)(1)-(7).  The category at issue here prohibits in pertinent part:

> Combinations of letters or numbers that refer, in any language, to a race, religion, color, deity, ethnic heritage, gender, sexual orientation, disability status, or political affiliation; provided, however, the commissioner shall not refuse a combination of letters or numbers that is a generally accepted reference to a race or ethnic heritage (for example, IRISH).

23 V.S.A. § 304(d)(4).

Registrants must also provide a meaning for each proposed vanity plate selection on their applications, which are signed under oath.  Plates are denied if the meaning supplied falls within one of the prohibited subject matter areas.  Nevertheless, proposed vanity plates that could have a dual meaning or reference both a permissible and prohibited subject matter may be allowed if the stated

4

meaning is a permissible subject matter.  For example, the
term FAITH may be allowed if the supplied meaning was
someone's name but if the same application had "faith in
God" as the meaning for FAITH, it would be denied as an
impermissible religious reference.  (Paper 86, at 30-31).
In addition, even incomprehensible proposed plates will be
denied if the supplied meaning falls into one of the
prohibited categories of § 304(d)(4).

Although the DMV Director of Operations is responsible
for giving final approval for vanity plate applications, DMV
clerks are the first to review the applications and from
time to time make final denial determinations.  In
determining whether to approve or deny a plate based on its
reference to a religion or a deity, DMV employees and
supervisors rely on their own knowledge, the registrant's
supplied meaning, and, at times, advice of the department's
general counsel.  DMV employees take many factors into
account when granting or denying vanity plates, including
the specificity of the religious term and whether or not the
term has become secularized.  For example, GODSAVES would be
denied, but PEACE or GRACE might be allowed because they are
not necessarily associated with a religion. (Paper 86, at

19-20).  Similarly, general terms such as HOPE and PEACE may

allowed, but specific references to religion or deities such

as YAHWEH or JESUS would be denied. (Id. at 22-23).

Before the current version of § 304(d)(4) was adopted

in May 2004, the content of vanity plates was regulated by

statute and regulation.  See Vt Code R. 14 050 025.  The

pre-amendment vanity plate statute stated simply that "[t]he

commissioner may refuse to honor any request that might be

offensive or confusing to the general public."  See Martin

v. State, 175 Vt. 80, 88 (2003).  In June 2000, the DMV

issued an administrative regulation prohibiting vanity

plates that refer, *inter alia*, to a religion, ethnic

heritage, or deity.  In February 2003, the Vermont Supreme

Court struck down the regulation because it prohibited

references to ethnic heritage.  Id. at 92.  The Court

reasoned that the regulation was not authorized by the

statute.  Id.  In May 2004, the Vermont legislature amended

§ 304(d)(4) to include a prohibition of vanity plates with

"[c]ombinations of letters, or numbers that refer in any

language, to a . . . religion . . . [or] deity."  As a

result, the current statute now mirrors the regulation,

prohibiting largely the same subject areas.  A gap between

6

February 2003 and May 2004 ensued, however, during which the DMV did not have the authority to enforce the regulation prohibiting references to religion on vanity plates.  Bryne applied for his vanity plate during this gap, but his application was denied based on the amended § 304(d)(4) on May 14, 2004.[4]

Since May 2004, the DMV has denied 25 requests, including Bryne's, for vanity plates because they made reference to religion or a deity.[5] (Paper 77-2; 74-1 at 6).  Although Bryne's discovery submissions included 44 post-May 2004 plates that he alleges referenced religion or a deity, the parties dispute whether many of the proposed plates in fact made such references.  For example the registrants for plates GEMINI and LIBRA gave astrological and zodiac sign as the plates' intended meanings. (Paper 68, Ex. 18, at 437, 441).  Similarly the parties dispute whether the plates FAERIES and 13WIZRD make reference to religion given that the supplied meanings were "the love of mystical characters" and "wizard plus a lucky number" respectively.  In addition,

---

[4] Bryne does not allege, nor does the record reflect, that his application was delayed in any way to be considered under the amended § 304.

[5] The plates denied were: ODHINN, SHIVA, REV B, SEEKGOD, ROMANS8, SHJ BVM, REV3 20, JMJ1, PSALM48, TORAH, ATMAN, HESTIA, KRISHNA, STBRUNO, PRAY, BVM 22, VTWITCH, GOD-SON, ONEGOD, 1GOD, FEDEDIO, THE REV, UM REV, GESU.

7

the parties dispute whether a plate falls within the prohibition where no meaning or a non-religious meaning is supplied.  Several variations of the reference to angels were issued including, ANGEL1, ANGEL21, ANGEL23, ANGELL, and ANGELSC.  The meanings supplied for those plates ranged from children's names to nicknames.

Bryne filed suit in this Court on January 1, 2005, alleging that the Vermont vanity statute was unconstitutional on its face and as applied.  On March 30, 2005, Bryne sought a preliminary injunction to prevent the DMV from enforcing the provisions in the vanity plate statute and regulations. (Paper 15).  On April 12, 2005, the DMV moved to dismiss Bryne's complaint for failure to state a claim. (Paper 19).  On August 23, 2005, this Court denied Bryne's request for a preliminary injunction and the DMV's motion to dismiss. (Papers 38 & 36).  In denying the preliminary injunction, this Court found that § 304(d)(4) was reasonable and viewpoint neutral on its face and that license plates were a nonpublic forum.  Nevertheless, because Bryne alleged that the DMV issued some vanity plates with religious references, but denied his, this Court allowed further discovery to determine whether Bryne could

raise an "as applied" claim for viewpoint discrimination and/or violation of equal protection.

Both sides have now moved for summary judgment. (Papers 63 & 71).  In addition, Bryne has moved to strike certain evidence from affidavits that defendants have submitted. (Paper 77-1).

DISCUSSION

Bryne alleged in his complaint that the Vermont statute regulating vanity plates, 23 V.S.A. § 304(d) (Supp. 2006), is unconstitutional on its face and as applied to him because it violates the First and Fourteenth Amendments. However, at the March 14, 2007 motion hearing Bryne withdrew his facial challenge to the regulation.  Bryne seeks a finding that the DMV unconstitutionally applied the provisions of § 304(d)(4) to him and an order that he obtain his vanity plate and attorney's fees.[6]  The issue is whether the law was constitutionally applied to Bryne.

**A. Standard of Review**

Summary judgment should be granted only if "there is no genuine issue as to any material fact and [therefore] the

---

[6]  Bryne's facial challenges to the statute were resolved at the preliminary injunction stage when the Court found that the state's regulation was reasonable and the statute's subject matter prohibition was viewpoint neutral. The Court also held that license plates were a nonpublic forum under the First Amendment. (Paper 36).

moving party is entitled to a judgment as a matter of law," Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing an absence of any genuine issue of material fact. <u>Feingold v. New York</u>, 366 F.3d 138, 148 (2d Cir. 2004) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)).  In ruling on a motion for summary judgment, "the court must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought." <u>Winter v. United States</u>, 196 F.3d 339, 346 (2d Cir. 1999) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986)).

### B. "As applied" Inquiry

Bryne alleges that although the DMV has allowed religious vanity plates consistently notwithstanding the May 2004 amendments to § 304(d), it denied his plate based on his religious viewpoint.  By allowing some vanity plates with references to religion, Bryne contends that the DMV discriminated against him based on his viewpoint and treated him differently than similarly situated individuals.  The DMV defends its application of § 304(d) as a reasonable method to avoid the appearance of Vermont endorsing religion in any manner and that any vanity plates referencing religion since May 2004 were issued in error, not amounting

10

to viewpoint discrimination or violation of equal
protection.

The Court must uphold a governmental restriction on
speech in a nonpublic forum as long as the restriction is
reasonable and viewpoint neutral.  Perry v. McDonald, 280
F.3d 159, 169 (2d Cir. 2001).  This Court has already found
§ 304(d) to be a reasonable method for the state to limit
the appearance of the state being associated with religion
in light of the purpose of the forum, which is primarily
vehicle identification. See Papers 36 and 38 (Report and
Recommendations and Order affirming, approving and adopting
Paper 36); see also Perry, 280 F.3d at 169 (Vermont has a
"legitimate interest in not communicating the message that
[it] approves of . . . offensive . . . terms [displayed] on
state license plates."); Gen. Media Communications, Inc. v.
Cohen, 131 F.3d 273, 281 n. 10 (2d Cir. 1997) (noting
disassociating government entity from speech is distinct
from suppressing speech associated with a private
individual); Martin, 175 Vt. at 97 (Johnson, J.,
dissenting) (noting reasonableness standard easily met in
case of vanity plate).  Accordingly, the Court need only
address viewpoint neutrality and equal protection, that is,
whether the number of plates issued in error under the same

11

law applied to Bryne subjected him to viewpoint discrimination or unequal treatment.

i.  Viewpoint neutrality

Notwithstanding this Court's finding that § 304(d) is reasonable, if it is "in reality a facade for viewpoint-based discrimination," Cornelius v. NAACP, 473 U.S. 788, 811 (1985), it must be struck down.  Make the Road by Walking, Inc. v. Turner, 378 F.3d 133, 150 (2d Cir. 2004).  Viewpoint discrimination is "an egregious form of content discrimination" in which "the government targets not subject matter but particular views taken by speakers on a subject." Rosenberger v. Rector & Visitors of the Univ. of Va., 515 U.S. 819, 829, 831 (1995).  In a nonpublic forum, the distinction between permissible content discrimination and impermissible viewpoint discrimination is imprecise.  Id. at 831; Make the Road by Walking, 378 F.3d at 150.  Vanity plates are a nonpublic forum on which the state of Vermont allows private parties to express their personal views, albeit as a secondary purpose to vehicle identification, and therefore the State must avoid viewpoint discrimination. Make the Road by Walking, 378 F.3d at 151 (noting where government is sole speaker, it need not ensure viewpoint diversity and can express its own viewpoint); see also

12

Children First Foundation, Inc. v. Martinez, 2006 WL 544502 (2d Cir. March 6, 2006) (non-precedential Second Circuit opinion holding "custom license plates involve at a minimum, some private speech"); Planned Parenthood of South Carolina v. Rose, 361 F.3d 786, 794 (4th Cir. 2004) (noting messages on standard and specialty license plates are associated with vehicle owners as well as government); Sons of Confederate Veterans, Inc. v. Virginia Dept. of Motor Vehicles, 288 F.3d 610, 621 (4th Cir. 2002) (same).  Accordingly, the First Amendment analysis applies here and the DMV's government speech argument fails.  Nevertheless, for the following reasons, the Court finds that the DMV did not engage in viewpoint discrimination when it rejected Bryne's proposed vanity plate.

In the context of vanity license plates, the "murkiness of the term viewpoint neutrality" persists and the United States Supreme Court has not addressed the issue.[7]  In

---

[7] A slightly different, but more developed, body of law has developed around specialty license plates.  There is a split among the circuit courts of appeal on whether specialty license plates, not vanity plates, are governmental or private speech and therefore whether the First Amendment applies.  Compare ACLU v. Bredesen, 441 F.3d 370 (6th Cir. 2006) (holding "Choose Life" specialty plate pure government speech not susceptible to a First Amendment challenge) with Planned Parenthood of South Carolina, Inc. v. Rose, 361 F.3d 786 (4th Cir. 2004) (holding license plate is combination of private and government speech and "Choose Life" specialty plate is viewpoint discrimination because government only authorized expression of one viewpoint (pro-life)) and Sons of Confederate Veterans, Inc. v. Commissioner of the Va. Dept. Of Motor Vehicles, 288 F.3d 610 (4th Cir. 2002) (holding Act prohibiting confederate flag on Sons of Confederate Veterans specialty plate was viewpoint discrimination because flag was symbolic acknowledgment of pride in Southern

Perry, the Second Circuit found no viewpoint discrimination
where the plate "SHTHPNS" was rejected because it included
an easily recognizable profanity ("shit"), which was
"offensive" under the then-existing § 304(d), and not
because the DMV did not like plaintiff's viewpoint that
"Shit happens (so don't let life's problems drive you to
drink)." Perry, 280 F.3d at 170-71.  In Pruitt v. Wilder,
840 F. Supp. 414 (E.D. Va. 1994), the court found viewpoint
discrimination where the vanity plate "GODZGUD" was rejected
because it made reference to a deity.  Id. at 418.  The law
was viewpoint discriminatory because it restricted a sub-set
of religious speech - direct references to deities - but
allowed other types of religious speech.  Id.  Accordingly,
"the more specific a prohibition is within a broad category,
the more likely it is to be viewpoint discrimination."
Martin, 175 Vt. at 99 (Johnson, J., dissenting) (noting
"[r]eligious speech can be banned entirely, but references
to deities only has been found to violate viewpoint
neutrality.").  The State must do more than create a
viewpoint neutral law; it must provide procedural

---

heritage) and Choose Life Illinois, Inc. v. White, No. 04C4361, 2007 WL
178455, *4 (N.D. Ill. Jan. 19, 2007) (finding denial of "Choose Life"
specialty plate based on its politically controversial "pro-life" viewpoint
unconstitutional).

14

protections to ensure its agencies do not engage in viewpoint discrimination. <u>Id.</u> (Johnson, J., dissenting); <u>see also</u> <u>Lewis v. Wilson</u>, 253 F.3d 1077, 1080 (8th Cir. 2001) (invalidating license plate statute for overbreadth because "contrary to public policy" standard did nothing to prevent the government from denying the plate "ARYAN-1" based on plaintiff's viewpoint, rather than a permissible content restriction).

Here, § 304(d) sets forth seven categories of subject matter prohibited from Vermont vanity plates.  23 V.S.A. § 304.  Subsection (d)(4) bans all references to religion and deities.  In addition, the DMV has a multi-step process for reviewing vanity plate applications, including initial review by a clerk, sometimes a supervisor, the Director of Operations, and sometimes the Department's general counsel. Not all plates require such a detailed review and clerks are authorized to deny plates, but before issuing plates, the Director must approve them.  Thus, Bryne's claim that § 304 is a prior restraint based on overbreadth must fail.  In this case, Bryne had a hearing to contest the denial of his application and could have sought state judicial review of the hearing officer's decision to affirm the denial. Likewise, given the procedural safeguards listed above,

15

Bryne was not denied due process.

For Bryne to prevail, he must show that notwithstanding the procedural protections in place, the DMV discriminated against his religious viewpoint when it denied his proposed plate.  The relevant inquiry is whether the DMV's issuance of a number of vanity plates in error since May 2004 constituted a practice of viewpoint discrimination that extended to review of Bryne's application.  Bryne argues that the DMV allowed at least 44 plates with references to religion or deities, but rejected his.  Specifically, Bryne contends that the DMV's method for using the meaning registrants supply for their vanity plates as a basis for issuing or rejecting them is viewpoint discrimination. There are several problems with this argument.

First, the DMV's use of registrant intent is not *ipso facto* viewpoint discriminatory, but rather a reasonable means to apply § 304(d)(4) in a viewpoint neutral manner. The DMV rejects vanity plates that are (1) objectively religious, such as JESUS, 1GOD, KRISHNA, and also those that are (2) subjectively religious according to the meaning the registrant supplied on his or her application, such as Bryne's application that referenced a Bible passage.  A registrant's supplied meaning controls only where there is a

16

question as to the significance of a proposed plate, either
because the DMV employee is not familiar with the term, the
term has more than one possible meaning such as ANGEL, or
the proposed plate is an objectively meaningless jumble of
letters and numbers.  Regardless of whether or not Bryne's
proposed plate, JN36TN, had more than one possible meaning,
his supplied meaning made his application subjectively
religious.  Nevertheless, because vanity plate applications
are signed and submitted under oath, the DMV is entitled to
rely on what the registrant supplies as the proposed meaning
of the plate.  Thus, the DMV's method of applying §
304(d)(4) is not viewpoint discriminatory simply because it
looks to the registrant's supplied meaning to determine
whether the proposed plate is making a prohibited reference.

     While the DMV admits it has issued some plates in
error such as BUDDHA and PSALM, it disputes making 44
errors.  It contends that many of the plates were not issued
in error because they do not reference religion or a deity.
For example, the DMV disputes that the vanity plates Bryne
identified as references to religion or a deity with non-
religious meanings such as names or nicknames of people and
pets (ANGEL21, ANGEL23, ANGELL, ANGELSC, ESTHER, GDKARMA,
KJAMES, ROMAN, SHE DVL, KALI, GODDESS, CHAOS, and BUDDHA)

were issued in error.  The DMV also disputes that vanity plates with astrological and zodiac signs (GEMINI and LIBRA) and references to magic and mysticism (ALCHEMY, FAERIES, 13WIZRD) were prohibited religious references.  Indeed, many of the plates that Bryne alleges were issued in error had non-religious meanings such as a person's name (ESTHER), home town (EDEN), and favorite movie (SINCITY) despite a possible second meaning being a reference to religion.  The fact that a third party viewing a Vermont vanity plate would not be privy to whether the registrant intended a religious or non-religious meaning for a plate susceptible to both is not lost on this Court.  Nevertheless, the DMV's method is a reasonable means for applying the statute's ban on references to religion or deities on Vermont vanity plates. Accordingly, using the DMV's method, the Court finds that the DMV issued approximately 12 plates in error between May 2004 and November 2006 when Bryne submitted discovery evidence: SINFUL1, PRAY4US, GDSPEED, AGAPE77, AGAPE 7, AGAPE 1, BLESSED, PSLAM, REV VV, SHALOM7, SINNER, BUDDHA. (Paper 68: Pls Ex. 18, at 421-23, 436, 444, 450; Pls Ex. 19, at 469, 543, 553, 562, 570; Pls Ex. 21, at 598).

     Second, that errors have happened in other instances, does not mean that Bryne is a victim of viewpoint

discrimination.  <u>Perry</u>, 280 F.3d at 170.  In <u>Perry</u>, the plaintiff made the same argument, i.e. that the issuance of other prohibited plates means that the rejection of her application was discrimination.  <u>Id.</u>  The Second Circuit reasoned that the amount of vanity plate applications the DMV must process each week make errors inevitable, but not indicative of viewpoint discrimination.  <u>Id.</u>  Here, it appears that 12 errors occurred in two and a half years, between May 2004 and November 2006, when Bryne filed his motion for summary judgment.  The volume of vanity plate applications submitted, the procedural safeguards in place, and the undisputed fact that the DMV denied plates referencing religion or deities twice as many times as it erred in the same period of time[8] is convincing evidence that these errors were not a masked practice of viewpoint discrimination against Bryne or other registrants with religious viewpoints.

Third, Byrne has not asserted any evidence that shows the DMV's desire to suppress his particular point of view about religion or the Bible.  <u>Cf.</u> <u>Cornelius</u>, 473 U.S. at 812 (noting evidence cast doubt on genuineness of viewpoint

---

[8] Including Bryne's JN36TN, the DMV denied 25 plates referencing religion of a deity.

neutral policy of excluding groups from the charity campaign).  On the contrary, the DMV has not singled out any particular religion in applying § 304(d)(4).  Since May 2004, the DMV has rejected plates referring to the Bible, Christianity, Buddhism, Hinduism, Islam and Wicca, including ODHINN, SHIVA, REV B, SEEKGOD, ROMANS8, SHJ BVM, REV3 20, JMJ1, PSALM48, TORAH, ATMAN, HESTIA, KRISHNA, STBRUNO, PRAY, BVM 22, VTWITCH, GOD-SON, ONEGOD, 1GOD, FEDEDIO, THE REV, UM REV, and GESU.  Cf. Pruitt,  840 F. Supp. at 418 (finding rule prohibiting vanity plates with references to deities was viewpoint discriminatory because it singled out a sub-set of religious speech).  The DMV has endeavored, though not perfectly, to restrict all references to any religion or deity from Vermont vanity plates.  Such a practice is content restrictive, not viewpoint discriminatory.  Accordingly, the Court finds that rejecting Bryne's proposed plate was a neutral application of the DMV's policy because his plate referenced a Bible passage, a prohibited subject area under § 304(d)(4).  There is no evidence that his application was denied based on a bias against his viewpoint, Christianity or the Bible; but rather, because it was a reference to religion.

**ii. Equal Protection**

20

Bryne's equal protection claim fails for two reasons. First, Bryne is not similarly situated with individuals who were issued vanity plates referencing religion before May 2004.  Before the current § 304(d) law was in place, there was no specific prohibition on references to religion, but rather only an offensive or confusing to the general public standard. <u>Martin</u>, 175 Vt at 88.  He is only similarly situated with those seeking vanity plates with religious references under the current § 304(d)(4).

Second, among those with whom Bryne is similarly situated, the DMV has not treated him differently from other registrants seeking vanity plates because it has rejected applications for plates that violate § 304(d)(4), including at least 24 applications for religious references on vanity plates.  Even if Bryne could show that the DMV's application of § 304(d)(4) had a disparate impact on him and others similarly situated, to sustain an equal protection clause challenge, he must prove the DMV had a discriminatory purpose.  <u>Village of Arlington Heights v. Metro. Housing Dev. Corp.</u>, 429 U.S. 252, 264-65 (1977).  Specifically, to invalidate a facially neutral law, as here, Bryne must show that the purpose for enacting the law was at least in part "because of, not merely in spite of" its disparate impact on

21

an identifiable group of persons.   Personnel Adm'r of Mass.
v. Feeney, 442 U.S. 256, 279 (1979).   The purpose of §
304(d)(4) was not to impact registrants wishing to have
religious vanity plates, but rather, to prevent Vermont from
being associated with or appearing to endorse, *inter alia*,
religion and references to deities on vanity license plates.
The disparate impact on individuals wishing to make
reference to religion or deities on their vanity license
plates does not amount to the requisite discriminatory
intent needed to sustain an equal protection violation.

## 2. Motion to Strike

Bryne also moves to strike certain affidavits from the
DMV Director of Operations and the Commissioner of the
Department for failure to comply with the personal knowledge
and factual assertion requirements from Fed R. Civ. P.
56(e).   Bryne alleges that parts of the Snyder and Rutledge
affidavits are legal arguments, not factual statements, and
not based on personal knowledge.   The DMV argues that his
motion is both procedurally improper according to the Local
Rules and, in any event, baseless.

Local Rule 7.1(a)(1) requires that written motions
contain the word "motion" in the title.   Bryne's motion to
strike does not contain the word "motion" in its title.

Rather, it appears as a point heading in his Statement of Disputed Material Facts and Response to Defendants' Statement of Undisputed Facts. (Paper 77-1). Accordingly, the request to strike is denied.[9]

<u>CONCLUSION</u>

In summary, the DMV has the right to prohibit religious messages on license plates provided it does not discriminate based on the particular message or viewpoint. While it may well have approved Bryne's application without knowledge of his intent to express his religious viewpoint on the license plate, when Bryne stated his meaning and intent, the DMV properly applied the statute prohibiting religious statements on state license plates.

For the reasons set forth above, I recommend that Bryne's motions be denied and the DMV's motion be granted.

Dated at Burlington, in the District of Vermont, this 9th day of August, 2007.

    /s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

---

[9] In its review of the affidavits, the Court has considered only the fact-based assertions supported by the record. Legal arguments have been disregarded.

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).